COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

PHILIP TRAN HARRIS,                                    No. 08-10-00103-CR

§

    Appellant,                                              Appeal from

§

v.                                                    297th District Court

§

THE STATE OF TEXAS,                              of Tarrant County, Texas

§

    Appellee.                                          (TC # 0560025D)

§

## O P I N I O N

Phillip Tran Harris appeals from a judgment adjudicating him guilty of aggravated possession with intent to deliver more than 28 but less than 200 grams of lysergic acid diethylamide (LSD) and assessing punishment at a fine of $5,450 and imprisonment for fifteen years. We affirm.

## FACTUAL SUMMARY

The indictment alleged that Appellant committed the charged offense on May 25, 1994. On September 24, 1999, Appellant entered a plea of guilty and the trial court placed him on deferred adjudication community supervision for a term of ten years. In 2008, the State filed a motion to adjudicate guilt alleging Appellant violated several conditions of community supervision. The motion alleged that Appellant committed a new offense by intentionally and knowingly possessing more than four but less than 200 grams of methamphetamine in 2008, failed to report, tested positive for methamphetamine or amphetamine on several dates while on community supervision, and he failed to attend and complete substance abuse assessment ordered by the trial court. At the conclusion of the hearing on the State's motion, the trial court found the evidence sufficient to prove Appellant had violated the conditions of community supervision. The court granted the State's

motion, adjudicated Appellant's guilt, and assessed his punishment at a fine of $5,450 and imprisonment for fifteen years. This appeal follows.

## CONSTITUTIONALITY OF SENTENCE

In his sole issue on appeal, Appellant contends that his sentence is excessive and constitutionally disproportionate in violation of the constitutional provisions of the United States and Texas Constitutions prohibiting cruel and unusual punishment.[1] Appellant's brief does not contain any argument or authority explaining how the protection provided by the Texas Constitution differs from the protection provided by the United States Constitution. State and federal constitutional claims should be argued in separate grounds, with separate substantive analysis or argument provided for each ground. *Muniz v. State*, 851 S.W.2d 238, 251-52 (Tex.Crim.App. 1993); *Heitman v. State*, 815 S.W.2d 681, 690-91 n.23 (Tex.Crim.App. 1991). Because Appellant has inadequately briefed the issue related to the Texas Constitution, nothing is presented for our review. *See Muniz*, 851 S.W.2d at 251-52; Tex.R.App.P. 38.1(I).

The Eight Amendment prohibits cruel and unusual punishment. U.S. Const. Amend VIII; *Graham v. Florida*, --- U.S. ----, ----, 130 S.Ct. 2011, 2021, 176 L.Ed.2d 825 (2010). In addition to prohibiting inherently barbaric punishment, the Eighth Amendment requires that punishment for crime be graduated and proportioned to the offense. *Graham*, 130 S.Ct. at 2021. Texas courts have traditionally held that, as long as the punishment assessed is within the range prescribed by the Legislature in a valid statute, the punishment is not excessive, cruel, or unusual. *Mullins v. State*, 208 S.W.3d 469, 470 (Tex.App.--Texarkana 2006, no pet.), *citing Jordan v. State*, 495 S.W.2d 949, 952 (Tex.Crim.App. 1973). At the time Appellant was indicted in 1994, possession of LSD with

---

[1] Appellant's brief does not identify the constitutional provisions on which he relies but we assume he refers to the Eighth Amendment of the United States Constitution and Article I, Section 13 of the Texas Constitution.

intent to deliver was an aggravated offense if the aggregate weight of the controlled substance, including any dilutants or adulterants, was 28 grams or more. Acts 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex.Gen.Laws 2230, 2935. The punishment range varied based on the amount possessed. Acts 1989, 71st Leg., R.S., ch. 678, § 1, 1989 TEX.GEN.LAWS 2230, 2935-36. In the instant case, the indictment alleged that the aggregate weight of the LSD was 28 grams or more but less than 200 grams. That offense was punishable by a prison term of five years to 99 years or life, and a fine not to exceed $50,000. Acts 1989, 71st Leg., R.S., ch. 678, § 1, 1989 TEX.GEN.LAWS 2230, 2935.[2] Appellant's fifteen year sentence certainly falls within the applicable punishment range. That is not dispositive of the issue presented on appeal because a sentence which falls within the statutory range may still run afoul of the Eighth Amendment's prohibition against grossly disproportionate punishment. *See Mullins*, 208 S.W.3d at 470.

In the context of the issue presented on appeal, Appellant challenges the trial court's decision to revoke community supervision and adjudicate him guilty by arguing that he was a good candidate to continue on community supervision. Whether Appellant was a good candidate for community supervision is not pertinent to our determination of this issue. Instead, when examining whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, we employ

---

[2] If the aggregate weight were 200 grams or more but less than 400 grams, the punishment range increased to an imprisonment term of 10 years to 99 years or life, and fine not to exceed $100,000. Acts 1989, 71st Leg., R.S., ch. 678, § 1, 1989 TEX.GEN.LAWS 2230, 2935-36. If the aggregate weight were 400 grams or more, the offense was punishable by a prison term of 15 years to 99 years or life and a fine not to exceed $250,000. Acts 1989, 71st Leg., R.S., ch. 678, § 1, 1989 TEX.GEN.LAWS 2230, 2936. LSD is now found in Penalty Group 1-A and it is an offense to manufacture, deliver, or possess with intent to deliver a controlled substance included in Penalty Group 1-A. TEX.HEALTH&SAFETY CODE ANN. §§ 481.1021, 481.1121 (Vernon 2010). Under current law, a person who possesses between 80 and 4000 "abuse units" of LSD with intent to deliver commits a first degree felony. TEX.HEALTH&SAFETY CODE ANN. § 481.1121(b)(3). If a person possesses more than 4,000 abuse units with intent to deliver, the offense is punishable by imprisonment for life or for a term of not more than 99 years or less than 15 years and a fine not to exceed $250,000. TEX.HEALTH&SAFETY CODE ANN. § 481.1121(b)(4). "Abuse unit" is defined as a single unit on or in any adulterant, dilutant, or similar carrier medium, including marked or perforated blotter paper, a tablet, gelatin wafer, sugar cube, or stamp, or other medium if the unit is commonly used in abuse of that substance. TEX.HEALTH&SAFETY CODE ANN. § 481.002(50).

the approach utilized by the Supreme Court in *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). *See Graham*, 130 S.Ct. at 2022 (stating that *Harmelin's* approach is suited for considering a gross proportionality challenge). Under that analysis, a court begins by making an objective comparison of the gravity of the offense with the severity of the sentence. *Graham*, 130 S.Ct. at 2022; *Harmelin*, 501 U.S. at 1005, 111 S.Ct. at 2707 (opinion of Kennedy, J.); *Mullins*, 208 S.W.3d at 470. If that threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence: (1) with the sentences imposed in other crimes in the same jurisdiction; and (2) with the sentences imposed for the same crime in other jurisdictions. *Graham*, 130 S.Ct. at 2022; *Harmelin*, 501 U.S. at 1005, 111 S.Ct. at 2707 (opinion of Kennedy, J.); *Mullins*, 208 S.W.3d at 470.

At the time Appellant committed the offense, the Texas Legislature had determined that the aggravated offense should be punished as a first degree felony but with an increased fine. The sentence assessed by the trial court falls in the lower end of that punishment range. Looking at the gravity of the offense, it is undisputed that distribution and use of illegal drugs continues to be a serious issue in our society. In conducting the threshold analysis in *Harmelin*, a case involving possession of more than 650 grams or 1.5 pounds of cocaine, the Supreme Court stated that possession, use, and distribution of illegal drugs represent "one of the greatest problems affecting the health and welfare of our population." *Harmelin*, 501 U.S. at 1002, 111 S.Ct. at 2705 (opinion of Kennedy, J.), *quoting Treasury Employees v. Von Raab*, 489 U.S. 656, 668, 109 S.Ct. 1384, 1392, 103 L.Ed.2d 685 (1989). In addition to the pernicious effects on the individual who consumes illegal drugs, such drugs relate to crime in at least three ways: (1) a drug user may commit crime because of drug-induced changes in physiological functions, cognitive ability, and mood; (2) a drug user may commit crime in order to obtain money to buy drugs; and (3) a violent crime may occur as part of

the drug business or culture. *Harmelin*, 501 U.S. at 1002-03, 111 S.Ct. at 2706. Noting that 650 grams of pure cocaine has a potential yield of between 32,500 and 65,000 doses and in light of the problems created by distribution and use of illegal drugs, the Supreme Court rejected as absurd the defendant's argument that his crime was nonviolent and victimless. *Harmelin*, 501 U.S. at 1002-03, 111 S.Ct. at 2705-06 (opinion of Kennedy, J.).

The record does not reflect how many grams of LSD Appellant actually possessed or how many doses or "abuse units" were contained in the amount he possessed. In analyzing the gravity of the crime, it is important to keep in mind that dosages of LSD are measured in micrograms rather than milligrams.[3] The United States Supreme Court described in *Chapman v. United States* the nature and manner of sale of LSD:

> According to the Sentencing Commission, the LSD in an average dose weighs 0.05 milligrams; there are therefore 20,000 pure doses in a gram. The pure dose is such an infinitesimal amount that it must be sold to retail customers in a "carrier." Pure LSD is dissolved in a solvent such as alcohol, and either the solution is sprayed on paper or gelatin, or paper is dipped in the solution. The solvent evaporates, leaving minute amounts of LSD trapped in the paper or gel. Then the paper or gel is cut into "one-dose" squares and sold by the dose. Users either swallow the squares, lick them until the drug is released, or drop them into a beverage, thereby releasing the drug. Although gelatin and paper are light, they weigh much more than the LSD. The ten sheets of blotter paper carrying the 1,000 doses sold by petitioners weighed 5.7 grams; the LSD by itself weighed only about 50 milligrams . . . .

*Chapman v. United States*, 500 U.S. 453, 457, 111 S.Ct. 1919, 1923, 114 L.Ed.2d 524 (1991).

Using the figures from *Chapman* for purposes of comparison, 28 grams of pure LSD has a potential yield of 560,000 doses or "abuse units" in the current terminology of the Texas Penal Code while 200 grams of pure LSD has a potential yield of 4 million doses or abuse units. Once applied to a carrier, the number of doses in 28 total grams will vary depending on the weight of the blotter paper, gelatin, sugar cubes, or other carrier medium. If we continue the analysis using the *Chapman*

---

[3] There are 1,000 micrograms in a milligram and 1,000,000 micrograms in a gram.

figures as a representative example, each sheet of blotter paper containing 100 doses of LSD would have weighed approximately .57 grams (5.7 grams divided by 10 sheets). Fifty sheets would have weighed approximately 28.5 grams (50 sheets multiplied by .57 grams per sheet) and would have yielded 5,000 doses (50 sheets multiplied by 100 doses on each sheet). At the upper end of the spectrum for this particular offense, 350 sheets of the same blotter paper would have weighed approximately 199.5 grams (350 sheets multiplied by .57 grams per sheet) and would have yielded 35,000 doses (350 sheets multiplied by 100 doses on each sheet).

Given the continued problem of substance abuse and drug trafficking, and the multiple threats posed to our society by possession of such a large amount of LSD with intent to deliver, the Texas Legislature could reasonably find that this offense should be punished as a first degree felony. *See Harmelin*, 501 U.S. at 1003, 111 S.Ct. at 2706. We conclude that an inference of gross disproportionality has not been shown in this case. Consequently, it is unnecessary to proceed further with the analysis. *See Graham*, 130 S.Ct. at 2022; *Harmelin*, 501 U.S. at 1005, 111 S.Ct. at 2707 (opinion of Kennedy, J.); *Mullins*, 208 S.W.3d at 470. We overrule Appellant's sole issue on appeal and affirm the judgment of the trial court.

June 8, 2011

—————————————————————
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)