COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





PHILIP TRAN HARRIS,

                                    Appellant,

v.

THE STATE OF TEXAS,

                                    Appellee. 

§
 
§
 
§
 
§
 
§

§


No. 08-10-00103-CR

Appeal from
297th District Court

of Tarrant County, Texas

(TC # 0560025D)



 

 

 




O P I N I O N

            Phillip Tran Harris appeals from a judgment adjudicating him guilty of aggravated possession
with intent to deliver more than 28 but less than 200 grams of lysergic acid diethylamide (LSD) and
assessing punishment at a fine of $5,450 and imprisonment for fifteen years. We affirm.
FACTUAL SUMMARY
            The indictment alleged that Appellant committed the charged offense on May 25, 1994. On
September 24, 1999, Appellant entered a plea of guilty and the trial court placed him on deferred
adjudication community supervision for a term of ten years. In 2008, the State filed a motion to
adjudicate guilt alleging Appellant violated several conditions of community supervision. The
motion alleged that Appellant committed a new offense by intentionally and knowingly possessing
more than four but less than 200 grams of methamphetamine in 2008, failed to report, tested positive
for methamphetamine or amphetamine on several dates while on community supervision, and he
failed to attend and complete substance abuse assessment ordered by the trial court. At the
conclusion of the hearing on the State’s motion, the trial court found the evidence sufficient to prove
Appellant had violated the conditions of community supervision. The court granted the State’s
motion, adjudicated Appellant’s guilt, and assessed his punishment at a fine of $5,450 and
imprisonment for fifteen years. This appeal follows.
CONSTITUTIONALITY OF SENTENCE
            In his sole issue on appeal, Appellant contends that his sentence is excessive and
constitutionally disproportionate in violation of the constitutional provisions of the United States and
Texas Constitutions prohibiting cruel and unusual punishment.


 Appellant’s brief does not contain
any argument or authority explaining how the protection provided by the Texas Constitution differs
from the protection provided by the United States Constitution. State and federal constitutional
claims should be argued in separate grounds, with separate substantive analysis or argument
provided for each ground. Muniz v. State, 851 S.W.2d 238, 251-52 (Tex.Crim.App. 1993); Heitman
v. State, 815 S.W.2d 681, 690-91 n.23 (Tex.Crim.App. 1991). Because Appellant has inadequately
briefed the issue related to the Texas Constitution, nothing is presented for our review. See Muniz,
851 S.W.2d at 251-52; Tex.R.App.P. 38.1(I).
            The Eight Amendment prohibits cruel and unusual punishment. U.S. Const. Amend VIII; 
Graham v. Florida, --- U.S. ----, ----, 130 S.Ct. 2011, 2021, 176 L.Ed.2d 825 (2010). In addition to
prohibiting inherently barbaric punishment, the Eighth Amendment requires that punishment for
crime be graduated and proportioned to the offense. Graham, 130 S.Ct. at 2021. Texas courts have
traditionally held that, as long as the punishment assessed is within the range prescribed by the
Legislature in a valid statute, the punishment is not excessive, cruel, or unusual. Mullins v. State,
208 S.W.3d 469, 470 (Tex.App.--Texarkana 2006, no pet.), citing Jordan v. State, 495 S.W.2d 949,
952 (Tex.Crim.App. 1973). At the time Appellant was indicted in 1994, possession of LSD with
intent to deliver was an aggravated offense if the aggregate weight of the controlled substance,
including any dilutants or adulterants, was 28 grams or more. Acts 1989, 71st Leg., R.S., ch. 678,
§ 1, 1989 Tex.Gen.Laws 2230, 2935. The punishment range varied based on the amount possessed. 
Acts 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex.Gen.Laws 2230, 2935-36. In the instant case,
the indictment alleged that the aggregate weight of the LSD was 28 grams or more but less than 200
grams. That offense was punishable by a prison term of five years to 99 years or life, and a fine not
to exceed $50,000. Acts 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex.Gen.Laws 2230, 2935.


 
Appellant’s fifteen year sentence certainly falls within the applicable punishment range. That is not
dispositive of the issue presented on appeal because a sentence which falls within the statutory range
may still run afoul of the Eighth Amendment’s prohibition against grossly disproportionate
punishment. See Mullins, 208 S.W.3d at 470.
            In the context of the issue presented on appeal, Appellant challenges the trial court’s decision
to revoke community supervision and adjudicate him guilty by arguing that he was a good candidate
to continue on community supervision. Whether Appellant was a good candidate for community
supervision is not pertinent to our determination of this issue. Instead, when examining whether a
sentence for a term of years is grossly disproportionate for a particular defendant’s crime, we employ
the approach utilized by the Supreme Court in Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680,
115 L.Ed.2d 836 (1991). See Graham, 130 S.Ct. at 2022 (stating that Harmelin’s approach is suited
for considering a gross proportionality challenge). Under that analysis, a court begins by making an
objective comparison of the gravity of the offense with the severity of the sentence. Graham, 130
S.Ct. at 2022; Harmelin, 501 U.S. at 1005, 111 S.Ct. at 2707 (opinion of Kennedy, J.); Mullins, 208
S.W.3d at 470. If that threshold comparison leads to an inference of gross disproportionality, the
court should then compare the defendant’s sentence: (1) with the sentences imposed in other crimes
in the same jurisdiction; and (2) with the sentences imposed for the same crime in other jurisdictions. 
Graham, 130 S.Ct. at 2022; Harmelin, 501 U.S. at 1005, 111 S.Ct. at 2707 (opinion of Kennedy, J.);
Mullins, 208 S.W.3d at 470. 
            At the time Appellant committed the offense, the Texas Legislature had determined that the
aggravated offense should be punished as a first degree felony but with an increased fine. The
sentence assessed by the trial court falls in the lower end of that punishment range. Looking at the
gravity of the offense, it is undisputed that distribution and use of illegal drugs continues to be a
serious issue in our society. In conducting the threshold analysis in Harmelin, a case involving
possession of more than 650 grams or 1.5 pounds of cocaine, the Supreme Court stated that
possession, use, and distribution of illegal drugs represent “one of the greatest problems affecting
the health and welfare of our population.” Harmelin, 501 U.S. at 1002, 111 S.Ct. at 2705 (opinion
of Kennedy, J.), quoting Treasury Employees v. Von Raab, 489 U.S. 656, 668, 109 S.Ct. 1384, 1392,
103 L.Ed.2d 685 (1989). In addition to the pernicious effects on the individual who consumes illegal
drugs, such drugs relate to crime in at least three ways: (1) a drug user may commit crime because
of drug-induced changes in physiological functions, cognitive ability, and mood; (2) a drug user may
commit crime in order to obtain money to buy drugs; and (3) a violent crime may occur as part of
the drug business or culture. Harmelin, 501 U.S. at 1002-03, 111 S.Ct. at 2706. Noting that 650
grams of pure cocaine has a potential yield of between 32,500 and 65,000 doses and in light of the
problems created by distribution and use of illegal drugs, the Supreme Court rejected as absurd the
defendant’s argument that his crime was nonviolent and victimless. Harmelin, 501 U.S. at 1002-03,
111 S.Ct. at 2705-06 (opinion of Kennedy, J.). 
            The record does not reflect how many grams of LSD Appellant actually possessed or how
many doses or “abuse units” were contained in the amount he possessed. In analyzing the gravity
of the crime, it is important to keep in mind that dosages of LSD are measured in micrograms rather
than milligrams.


 The United States Supreme Court described in Chapman v. United States the
nature and manner of sale of LSD:
According to the Sentencing Commission, the LSD in an average dose weighs 0.05
milligrams; there are therefore 20,000 pure doses in a gram. The pure dose is such
an infinitesimal amount that it must be sold to retail customers in a “carrier.” Pure
LSD is dissolved in a solvent such as alcohol, and either the solution is sprayed on
paper or gelatin, or paper is dipped in the solution. The solvent evaporates, leaving
minute amounts of LSD trapped in the paper or gel. Then the paper or gel is cut into
“one-dose” squares and sold by the dose. Users either swallow the squares, lick them
until the drug is released, or drop them into a beverage, thereby releasing the drug. 
Although gelatin and paper are light, they weigh much more than the LSD. The ten
sheets of blotter paper carrying the 1,000 doses sold by petitioners weighed 5.7
grams; the LSD by itself weighed only about 50 milligrams . . . . 

Chapman v. United States, 500 U.S. 453, 457, 111 S.Ct. 1919, 1923, 114 L.Ed.2d 524 (1991).
            Using the figures from Chapman for purposes of comparison, 28 grams of pure LSD has a
potential yield of 560,000 doses or “abuse units” in the current terminology of the Texas Penal Code
while 200 grams of pure LSD has a potential yield of 4 million doses or abuse units. Once applied
to a carrier, the number of doses in 28 total grams will vary depending on the weight of the blotter
paper, gelatin, sugar cubes, or other carrier medium. If we continue the analysis using the Chapman
figures as a representative example, each sheet of blotter paper containing 100 doses of LSD would
have weighed approximately .57 grams (5.7 grams divided by 10 sheets). Fifty sheets would have
weighed approximately 28.5 grams (50 sheets multiplied by .57 grams per sheet) and would have
yielded 5,000 doses (50 sheets multiplied by 100 doses on each sheet). At the upper end of the
spectrum for this particular offense, 350 sheets of the same blotter paper would have weighed
approximately 199.5 grams (350 sheets multiplied by .57 grams per sheet) and would have yielded
35,000 doses (350 sheets multiplied by 100 doses on each sheet). 
            Given the continued problem of substance abuse and drug trafficking, and the multiple
threats posed to our society by possession of such a large amount of LSD with intent to deliver, the
Texas Legislature could reasonably find that this offense should be punished as a first degree felony. 
See Harmelin, 501 U.S. at 1003, 111 S.Ct. at 2706. We conclude that an inference of gross
disproportionality has not been shown in this case. Consequently, it is unnecessary to proceed
further with the analysis. See Graham, 130 S.Ct. at 2022; Harmelin, 501 U.S. at 1005, 111 S.Ct. at
2707 (opinion of Kennedy, J.); Mullins, 208 S.W.3d at 470. We overrule Appellant’s sole issue on
appeal and affirm the judgment of the trial court.


June 8, 2011                                                                
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)